FANNY L. COOPER, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF JOHN H. COOPER, DE-
CEASED, AND FANNY L. COOPER, INDIVIDUALLY,
PLAINTIFF-RESPONDENT, v. ENDRESS MOTORS, INC.,
A CORPORATION OF NEW JERSEY, DEFENDANT-
APPELLANT.

Submitted May 26, 1939—Decided September 22, 1939.

For the respondent, *Carman C. Reina* and *John F. Ryan.*

For the appellant, *Foley & Francis* (*John J. Francis,* of counsel).

The opinion of the court was delivered by

RAFFERTY, J. This appeal is by Endress Motors, Inc., a corporation, from judgments entered in favor of Fanny L. Cooper, individually and in her representative capacity, upon jury verdicts rendered in the Supreme Court, Union Circuit. Walter M. Vail, a co-defendant, does not appeal.

The action resulted from a motor vehicle accident occurring on the Pulaski Skyway at the South street ramp in Newark as the skyway runs from Jersey City to Newark.

Just before one o'clock in the morning of February 7th, 1937, defendant Vail, an automobile salesman employed by Endress Motors, Inc., of Plainfield, Union county, called at a tavern in North Plainfield, Somerset county, known as the Cooper Tavern, and which was operated or managed by decedent Cooper, husband of respondent. As a result of this visit, Cooper, his wife and three other persons went to a hotel in Hoboken in an automobile operated by Vail and owned by Endress Motors, Inc. At the hotel the party had some food and refreshments and on their return home in this automobile the accident happened at the point indicated and at about four A. M. Cooper died as a result of the injuries sustained in the accident. Mrs. Cooper sustained personal injuries.

The controversy on appeal involves the question of the proof of agency of Vail for Endress; alleged error of the trial court in its charge to the jury and alleged error of the trial court in refusing to make certain requested charges.

On the plaintiff's case it appeared that Vail was a sales agent for the Endress Company and had been in the employ of this company in that capacity for many years; that the car involved was owned by the Endress Company; carried dealer's plates and was assigned by that company to Vail for demonstration purposes; that Vail came to the tavern just before the closing hour and engaged in conversation with several of the patrons and with decedent Cooper and Mrs. Cooper, and that Vail suggested the trip to Hoboken. As to the conversation of Vail, plaintiff's witness Galuppo testified, "about all I heard is about the car being outside, a new car, and would like it very much if they would go out for a ride. To have a little refreshments of some sort, a sandwich, or

something like that." Harry Bowe, another of plaintiff's witnesses, stated, "Mr. Vail come to the back room and he said to Mrs. Cooper, 'I think I am going to sell your husband a car, and I am going to take you out for a demonstration,' " Forristel, another of plaintiff's witnesses, stated, "Mr. Vail was talking to Mr. Cooper in reference to taking a ride for a demonstration." Further, "he asked Mr. Cooper to take a ride at closing time for a demonstration in a new Buick car." Emma Bowe, another of plaintiff's witnesses, stated, "he [Vail] came to the table and he said, 'I think I sold your husband a car, and I have it out in the front, and I want to take you [Mrs. Cooper] out in a demonstration.' " It was shown also that on a previous occasion Vail had called at the tavern at about the same hour and had taken one Menthe to the same hotel in Hoboken for refreshments and had thereafter sold Menthe an automobile. As to this, Vail himself testified, under cross-examination, "Well, I really think that the trip to Hoboken interested Menthe, yes," and that the trip to Hoboken "had some effect" in eventually selling the automobile to Menthe. For the plaintiff it was shown also that upon leaving the tavern for Hoboken Vail drove to the Endress plant at Plainfield and refueled the automobile. This was not charged against Vail by the Endress Company but was within his permitted allowance of gasoline for that month. Upon his examination Vail denied inviting decedent Cooper and Mrs. Cooper for a demonstration ride and testified that he made no effort to sell an automobile to Cooper, because he was satisfied that Cooper was not in the market to purchase a new Buick automobile and that it was Cooper who paid for the refreshments had at Hoboken.

Motions for directed verdict against Fanny L. Cooper, individually and in her representative capacity, made on behalf of defendants and based on the ground that there was no evidence that Vail was acting as agent for Endress Motors, Inc., at the time of the occurrence of the accident, were denied by the trial court and we think properly so. *Mahan* v. *Walker.* 97 *N. J. L.* 304.

Appellant argues, however, that the testimony of the witnesses Galuppo and Harry Bowe is not to be considered

because during the giving of their testimony counsel for plaintiffs gave to the witnesses signed statements, made by them within a few days from the date of the accident, with which to refresh their recollections and that therefore the testimony of these witnesses was neutralized and became valueless. In this respect it is necessary to refer only to the witness Galuppo. He was asked by counsel, "Did Mr. Vail say anything else in your presence? *A*. Not outside that." Thereupon counsel stated, "I plead surprise and I show the witness this paper." The witness identified the paper as being a statement signed by him the day following the accident and testified the paper would refresh his recollection as to just what defendant Vail said that night. He thereupon testified as has been before indicated. In support of its contention that the testimony thus adduced neutralized all of the testimony of the witness and that the court should have instructed the jury to disregard his testimony, appellant cites *State* v. *D'Adame*, 84 *N. J. L.* 386, 396, and *Putnam* v. *United States*, 162 *U. S.* 687, 695. It is obvious that appellant misconceives the situation. The cited cases deal with the introduction into evidence of a prior statement made by the witness which is repugnant to or contradictory of the testimony adduced from him at the trial and is offered for the purpose of confronting the witness with such contradictory statement and to evidence the contradiction. Here, approximately two years after the occurrence of the accident, the statements served merely the purpose of recollection. They were not offered in evidence.

It is well established that a witness may use his own memorandum made at or near the time of the events recorded to refresh and supplement the memory and that the use of such a memorandum rests very much in the judicial discretion. *Myers* v. *Weger*, 62 *N. J. L.* 432. This is also the rule where the memorandum is made by another party at the dictation of the witness. *Cartan* v. *Phelps*, 91 *N. J. Eq.* 312, 316. Moreover, it is to be pointed out that the testimony of the witnesses Forristel and Emma Bowe was given without the aid of statements previously made and was, together with other testimony before alluded to, sufficient to make a jury question with respect to the agency of Vail.

It is contended that the charge of the court with respect to certain of the injuries claimed to have been suffered by Fanny L. Cooper, individually, was misleading and erroneous. With this we do not agree. The court said:

"* * * You have it testified to in this case that Mrs. Cooper is suffering from what is known as a psychic scar, among other things, and a highly nervous, neurotic condition brought about by this accident. And you have to differentiate between what part of that neurosis or psychic condition, nervous condition, if any, from which Mrs. Cooper is suffering, is from her personal injury in her own case, from that which arose out of shock that she sustained by reason of her husband's death. And I say to you, not because I make the law, or whether I agree with it or not, that any part of Mrs. Cooper's condition she might have it is the result of her husband's death, for that condition, for that nervous condition, for that neurotic condition she could not recover. * * * For any part of Mrs. Cooper's condition, if any there is, attributable to her personal injury, of course, she could recover for that part which is the result of her personal injury, but for all of it, or any part of her nervous condition, her neurotic condition, which is caused by or brought about by any shock which she might have sustained by reason of her husband being killed, it could not be considered to any extent in the way of damages, because no such damages are allowed for such a situation."

There was competent medical testimony to the effect that Mrs. Cooper was suffering from neurosis resulting from this accident, the principal cause of which was emotional shock received upon learning of the death of her husband, referred to by Dr. Blumberg as a "psychic scar," but, that part of it proceeded from a brain concussion upon which had become engraved a neurosis, and that the extent or influence of either of these causes upon her entire neurotic condition could not be determined. The defense produced no medical testimony whatsoever. It is urged that the charge of the court thus given permitted the jury to find that some part of the psychic condition came from Mrs. Cooper's personal injury and to assess damages against defendant for such part. We cannot but

conclude that the portion of the charge objected to was a clear and unmistakable presentation of the law of the subject. It was pre-eminently the function of the jury to measure the legal damage in the light of the medical testimony adduced and this charge. No error is found therein.

The remaining grounds of appeal refer to the refusal of the trial court to make certain requested charges, the purport of which is that it was incumbent on plaintiff, as administratrix, &c., to show that the income to the widow and next of kin of decedent Cooper from the continued operation of the tavern was diminished because of the death of Cooper. But these grounds of appeal are not now available to appellant. On the return of the rule to show cause why the verdicts should not be set aside as being excessive, obtained by appellant, these matters were argued before the trial court. Appellant will not now be permitted to renew his arguments to such points on appeal. *Freschi* v. *Mason,* 108 *N. J. L.* 272, and cases there cited.

The judgments appealed from are affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.