10 N.J. Super. 537 (1950)
77 A.2d 496
RALPH CIARDELLA AND LOUISE CARBONE, PLAINTIFFS-APPELLANTS,
v.
ROYAL LESTER PARKER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 15, 1950.
*540 Before Judges FREUND, PROCTOR and ROGERS.
Mr. Harry Chasin argued the cause for the appellant (Messrs. Marcus & Levy, attorneys).
Mr. Joseph J. DeLuccia argued the cause for the respondent (Mr. A. Leo Bohl, attorney).
The opinion of the court was delivered by PROCTOR, J.A.D.
Plaintiffs appeal from an adverse judgment entered upon a verdict in the Superior Court, Law Division, in a negligence action arising out of a collision between an automobile owned and operated by the defendant Parker, and an automobile owned and operated by the plaintiff Ciardella, in which plaintiff Louise Carbone was an occupant. Ciardella sued for damages for the repairs to his automobile, and Louise Carbone sought damages for personal injuries sustained by her.
There was a sharp conflict in the testimony as to the cause of the collision. Plaintiffs' theory was that their car was *541 parked off the highway when defendant's car struck the rear of the Ciardella car. On the other hand, defendant contended that Ciardella suddenly backed his automobile into the highway from a driveway, striking defendant's vehicle.
The plaintiffs advance three grounds for reversal of the judgment against them: (a) the examination of the witness Hannold constituted harmful error; (b) the court erred in its charge; (c) the court erred in its refusal to charge as requested.
Hannold, chief of police of the municipality where the collision occurred, was called as a witness for the defendant. After asking the witness to identify himself and also bringing out that he had been subpoenaed by the plaintiffs (but not called by them), defendant's attorney, over objection, was permitted to show the witness a written statement. Hannold testified that the statement contained his signature. Over objection, the witness was allowed to read the statement to himself, after which he testified as to the position of the cars when he arrived at the scene of the collision. The witness was then interrogated by defendant's attorney:
"Q. Now, Officer Hannold, did Mr. Ciardella make any statement to you?
"A. Sir, not that I recall."
Defendant's attorney thereupon pleaded surprise and asked permission to cross-examine the witness, which the court granted. The examination continued:
"Q. Did you on October 28, 1948, make the statement that I permitted you to read a few minutes ago?
"A. Yes, sir, that is my handwriting there and my signature."
After a colloquy between the court and counsel, the following occurred:
"Q. Now, did Mr. Ciardella make any statement to you concerning the accident?
"A. Sir, not that I recall. That night, there was a lot of excitement. There was quite a crowd around there, and being a police officer, and you see the girl was hurt, she was crying, I could not say.
*542 "Q. Did he, Officer, make the following statement to you:
"`I talked to the drivers of both cars, and the driver of the car that was in the driveway told me he would pay for the damages as it was his fault.'
"Did he make that statement?
"Mr. Chashin: Your Honor, I object on all the grounds which I previously have stated, if your Honor please. I thought you would prefer I would not repeat the reasons. They are all comprised within the objection to the prior question.
"The Court: I will allow it.

* * * * * * *
"Q. Do you want the question re-read or can you answer it?
"A. I would like to ask that question over again."
(The last question read by the Reporter.)
"The Witness: I cannot recall that he did.
"Q. Did you in your statement of October 28th, 1948, say, `I talked to the driver of both cars, and the driver of the car that was in the driveway told me that he would pay for the damages as it was his fault'?"
The answer, not being responsive, was struck.
Later the defendant called a witness, Grist, an investigator, who testified he took a statement, signed by Hannold, on October 28, 1948. On objection, the written statement was not admitted in evidence.
It is clear that a party whose cause or defense is injured by the unexpected answer of his own witness may, upon a showing of surprise, neutralize the effect of the adverse testimony by proving that, at a previous time, the witness had made a statement inconsistent with his testimony. Stappenbeck v. Jagels Fuel Corp., 131 N.J.L. 215 (E. & A. 1944). This may be accomplished by cross-examination of the witness. State v. Hogan, 137 N.J.L. 497 (old Sup. Ct. 1948); affirmed, 1 N.J. 375 (1949). However, the purpose of such cross-examination is limited, as stated by Justice Burling in State v. Hogan, supra:
"This cross-examination is permitted for the sole purpose of neutralizing or of wiping the slate clean of the unexpected adverse testimony of the witness and is to be clearly distinguished from impeachment."
In the present case there was no "adverse" or hurtful testimony given by Hannold and, consequently, there was nothing *543 to be erased. The effect of neutralizing the testimony of the witness should never be more than the cancellation of the adverse answer by which the party is surprised. Moon v. Lewis, 116 N.J.L. 521 (E. & A. 1936); State v. D'Adame, 84 N.J.L. 386 (E. & A. 1913). Therefore, where the witness, as here, gives no testimony injurious to the party calling him but only fails to render the assistance which was expected, because of a failure of recollection, there is no basis for neutralizing under the rule. While a party should not be denied the right to defend his case by an unwilling or hostile witness, yet he should not be permitted to read before the jury an unsworn statement of such witness under the pretense of neutralizing his testimony. See cases in Note, 74 A.L.R. at 1064 et seq.; Note, 117 A.L.R. 326; Note, 42 L.R.A. (N.S.) 747; 58 Am. Jur. 445, § 800 et seq. See also Wigmore on Evidence, 3rd Ed., §§ 1018, 1043.
Under the circumstances, it was unusual for the defendant to be permitted to show his own witness the signed statement and to require the witness to read it before he had been asked any questions concerning a fact in issue. After Hannold testified that the written statement contained his signature but that he did not recall Ciardella's making any statement to him, defendant's counsel was permitted, in the presence of the jury, to read to the witness, in the form of a question, a damaging admission allegedly made by Ciardella. The written statement itself, of course, was not competent as proof of the facts stated therein. Moon v. Lewis, supra. Since Hannold had not given any testimony injurious to the defendant nor manifested any bias, it seems clear that the interrogation was prejudicial to the plaintiffs in that it allowed the jury to consider the content of his unsworn statement assertively expressing, as it did, that Ciardella by his own admission was at fault. The result of such interrogation was to put in the mouth of the witness the very allegations of fact which defendant wished him to verify by an affirmative answer. See Fisher v. Hart, 149 Pa. St. 232, 24 A. 225 (Sup. Ct. 1892). Even if we assume that it was proper for the *544 defendant's attorney to read excerpts from the statement in the presence of the jury, such excerpts have no substantive or independent testimonial value, and the jury should have been instructed to that effect. State v. D'Adame, supra; State v. Kysilka, 85 N.J.L. 712 (E. & A. 1914); State v. Rappise, 3 N.J. Super. 30 (App. Div. 1949); Wigmore on Evidence, 3rd Ed., § 1018. Compare Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495, 500 (Essex Cty. Ct. 1950). Moreover, an admission by Ciardella would not be binding on plaintiff Carbone.
Nor can the interrogation be justified on the ground of refreshing Hannold's recollection. It was evident that the witness' memory was not refreshed, and the use of the statement was then at an end. Thereafter, it was improper for the defendant's attorney to call attention to its contents by way of interrogation under the guise of refreshing his recollection. Wigmore on Evidence, 3rd Ed., § 763; see also Note, 125 A.L.R. at 65; cf. Crothers v. Caroselli, 126 N.J.L. 590 (E. & A. 1941); Cooper v. Endress Motors, Inc., 123 N.J.L. 290 (E. & A. 1939); North Hudson County Railway Co. v. May, 48 N.J.L. 401 (Sup. Ct. 1886).
The cases of State v. Kwiatkowski, 83 N.J.L. 650 (E. & A. 1912), and State v. Silver, 2 N.J. Misc. 479 (Sup. Ct. 1924); affirmed, 101 N.J.L. 232 (E. & A. 1925), are not applicable. In each of those cases the witness had given testimony at an earlier trial, and it was with this former testimony that he was confronted at the later trial. A witness' prior testimony is ordinarily usable to refresh his memory either on direct or cross-examination. See Note, 125 A.L.R. at 240.
We conclude the interrogation of Hannold constituted prejudicial error.
We find that the remaining reasons assigned for reversal are without merit.
Reversed and remanded, costs to abide the event.